STATE of Missouri, Respondent,

v.

Richard E. HILL, Appellant.

No. WD 48542.

Missouri Court of Appeals,
Western District.

Jan. 17, 1995.

Patricia A. Richter, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando A. Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

HANNA, Judge.

The defendant was charged with three counts of the Class B felony of selling a controlled substance, § 195.211, RSMo Supp. 1993, and two counts of armed criminal action, § 571.015, RSMo 1986. The drugs sold were crack cocaine. He was tried and convicted by the court, and sentenced to five years imprisonment for each count of selling a controlled substance and three years imprisonment for each count of armed criminal action, to run concurrently. On appeal, the defendant challenges the sufficiency of the evidence to sustain the convictions for armed criminal action and the court's denial of his motion to disclose the identities of the two confidential informants.

The facts viewed in the light most favorable to the convictions are as follows. On January 5, 1993, undercover police officer Martin Cobbinah and a confidential informant went to defendant's residence at 5535 Garfield to purchase crack cocaine. When they entered, the defendant had a black "revolver sitting in his lap with his finger inside the trigger guard, on the trigger." Defendant then handed the revolver to his cousin, Calvin Jordan, to free his hands for the drug transaction. Jordan stood behind Officer Cobbinah while Cobbinah purchased the drugs from defendant.

On January 28, 1993, Officer Cobbinah and a different confidential informant returned to defendant's residence. When they approached the house, the door opened and defendant and Jordan appeared at the door. Jordan held a sawed-off shotgun in a military stance with the butt of the gun in one hand and the barrel in the other hand. After Officer Cobbinah and the confidential informant entered the house, Jordan again stood behind Officer Cobbinah as he purchased drugs from defendant.

One week later, Officer Cobbinah went to defendant's residence and purchased crack cocaine from defendant a third time. This was described as the "confirmation buy." After Officer Cobbinah left the house, he described defendant and Jordan to the street narcotics tactical squad who then obtained a search warrant. During the search, the police found a Mossberg .12 gauge pistol-grip shotgun with six live rounds and a black Lorcin .380 semi-automatic handgun with eight live rounds. They also found twenty-five baggies of crack cocaine and a marked $20 bill used by Officer Cobbinah to purchase the crack cocaine from defendant. Defendant was arrested at the house.

In his first point, defendant claims that the state's evidence was insufficient to prove his guilt beyond a reasonable doubt for the armed criminal action charges. He argues that the state did not establish that he sold drugs "by, with or through the use, assistance or aid of a deadly weapon."

In reviewing a challenge to the sufficiency of the evidence to support a conviction, we consider the evidence and all reasonable inferences in the light most favorable to the decision of the fact finder and disregard all evidence to the contrary. *State v. Villa-Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992). We are limited to determining whether there was sufficient evidence from which the trial court could reasonably have found defendant guilty, and we may not weigh the evidence. *Id.*

To sustain a conviction for armed criminal action, the state must prove that the defendant committed a felony by, with or through the use, assistance, or aid of a deadly weapon. § 571.015, RSMo 1986. The selling of a controlled substance is a felony, § 195.211.2, RSMo Supp.1993, and defendant does not contest his convictions for the sale of a controlled substance. Therefore, the only question is whether defendant committed the felonies by, with or through the use, assistance or aid of a deadly weapon.

Defendant cites *State v. Reynolds,* 819 S.W.2d 322 (Mo. banc 1991), to support his contention that it is necessary to use the deadly weapon during the entire course of the felony in order to be convicted of armed criminal action. The defendant further argues that the mere intent to use the weapon is not sufficient, citing *State v. Hart,* 805 S.W.2d 234 (Mo.App.1991). This reliance is misplaced. In *Reynolds,* the defendant was convicted of armed criminal action and burglary, but his armed criminal action conviction was reversed on appeal. The basis of the defendant's conviction for armed criminal action was a knife found in a sheath hooked inside his boot. *Reynolds,* 819 S.W.2d at 327. This knife never left defendant's boot and was not used during the course of the burglary. The victims were not aware of its presence. Furthermore, the defendant did not use the knife for any purpose in the burglary. These facts are considerably different from the facts in the case at bar.

As stated above, defendant's first armed criminal action conviction stems from his sale of crack cocaine when Officer Cobbinah entered defendant's residence and defendant was armed with a black revolver with his finger on the trigger. When the transaction was to take place, defendant handed the revolver to Calvin Jordan who stood behind Officer Cobbinah during the sale.

Defendant's second armed criminal action conviction stems from his sale of crack cocaine to Officer Cobbinah on January 28, 1993. Officer Cobbinah testified that Jordan held a shotgun in a military stance as Cobbinah entered the defendant's residence and that Jordan again stood behind him while the defendant sold him drugs.

The guns were an integral part of the sale of illegal drugs. Their presence was designed to aid in the commission of the sale. Here, Officer Cobbinah was made aware of the presence of a gun on both occasions. Officer Cobbinah testified that the guns were intimidating. The guns established that he should "go in, do your business, get out." They were used to protect the perpetrators and their drugs. In the dangerous endeavor of drug trafficking, guns are an integral ingredient which are used to aid and assist in the commission of the crime of the sale of illegal drugs. They present a classic situation with which the armed criminal action statute is designed to deal. In both of these situations they aided in the commission of the felonies. Their use was sufficient to support defendant's convictions on the two counts of armed criminal action. Point denied.

In his second point, defendant claims that the trial court erred in denying his motion for disclosure of the identities of the confidential informants or his alternative motion of dismissal.[1] Specifically, he claims that the confidential informants' testimony was crucial to his defense of mistaken identity[2] and could have provided essential facts to the charges of armed criminal action.

Before the trial, defendant argued to the trial court that the identities of the confidential informants were needed because they could have "had an entirely different view of what happened, and that some of the issues in this case are whether or not there were guns present, what use was made of the guns, or who had them." Defendant concluded that "obviously, if there is another person present, there is another point of view on the particular facts of the case." Defendant did not make any arguments to the court that the confidential informants' testimony was needed because this is a case of mistaken

---

1. Defendant did not file a copy of his motion for disclosure of confidential informants with this court.

2. Defendant did not raise this ground to the trial court. Therefore, we will review this claim under plain error. Rule 30.20.

identity. The court denied defendant's motion to obtain the identities of the confidential informants.

■ Whether disclosure must be made depends on the particular circumstances of each case. *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). The Supreme Court described the necessity of weighing the public interest against the individual defendant's rights.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.*

■ In general, communications made by informers to government officials are privileged and need not be disclosed. *State v. Yates*, 442 S.W.2d 21, 25 (Mo.1969). The purpose of the privilege is to protect and further the public interest in law enforcement by encouraging citizens to communicate their knowledge of the commission of crimes to law enforcement officials. *State v. Taylor*, 508 S.W.2d 506, 511 (Mo.App.1974). Concepts of fundamental fairness create exceptions to the rule because there are circumstances in which disclosure of the identity of an informant is essential to enable a defendant to adequately establish a defense. *State v. Amrine*, 741 S.W.2d 665, 671 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). When an informant is an active participant, there is a greater likelihood that fundamental fairness will require disclosure of identity, as distinguished from when they merely provide information. *State v. Simpson*, 611 S.W.2d 556, 559 (Mo.App.1981). However, although participation is a major factor for the trial court to consider, participation alone does not always mandate disclosure. *State v. Sproul*,

786 S.W.2d 169, 171 (Mo.App.1990) (*citing Taylor*, 508 S.W.2d at 512).

■ The determination of whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court. *State v. Funkhouser*, 729 S.W.2d 43, 44 (Mo. App.1987). The court must balance the relevance of disclosure and importance to the defense against the state's need for nondisclosure. *Sproul*, 786 S.W.2d at 171. The defendant has the burden of developing a record which shows the need for disclosure. *Id.*

■ Here, defendant has not met his burden. In balancing the state's need for confidentiality against the importance of disclosure to the defense, a crucial factor is the role played by the informants in the criminal activity. Here, the informants were present at the sale, which alone does not mandate disclosure. As stated above, where there is active informant participation plus other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or where the informant is the sole witness to the crime charged, then the identity of the informant may be required for purposes of fairness. *Taylor*, 508 S.W.2d at 512.

First, contrary to defendant's newly asserted claim, this is not a case of mistaken identity. Defendant eliminated the issue of identity by admitting to Officer Robinson that he sold the crack cocaine, rented the house and bought the guns. *See State v. Broadus*, 616 S.W.2d 69, 71 (Mo.App.1981).

Second, there is no contradictory evidence or denials of the accusations involved in this case, as defendant did not present any evidence. Calvin Jordan, defendant's cousin and associate, was present at all three drug sales. Defendant could have called Jordan to establish a defense, but he did not.

Finally, the record does not establish that if the informants' whereabouts had been disclosed when requested they would have been available to testify. *Sproul*, 786 S.W.2d at 172. Nor does anything in the record indicate that the state knew the whereabouts of the informants. *Id.* Therefore, defendant has not set forth sufficient facts establishing

his need for the informants' names. There was no error in the trial court's ruling prohibiting disclosure.

The judgments of conviction are affirmed.

All concur.