**STATE of Missouri, Respondent,**

v.

**James C. COLEMAN, Appellant.**

No. WD 49795.

Missouri Court of Appeals,
Western District.

Sept. 9, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1997.

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

James C. Coleman appeals his conviction on one count of selling cocaine, § 195.211, RSMo Supp.1993. Mr. Coleman contends that the trial court abused its discretion by failing to grant him a new trial on the ground of juror misconduct, and by denying his motion to disclose the identity of a confidential informant.

The judgment of the trial court is affirmed and remanded with directions.

On September 13, 1993, Marcus Regan was working as an undercover detective with the Street Narcotics Unit of the Kansas City, Missouri, Police Department. At approximately 6:00 p.m., Detective Regan, accompanied by a confidential informant, drove to a house where drug sales were allegedly taking place. Detective Regan stopped his car forty to fifty feet from the front of the house, parking on the same side of the street and at a forty-five degree angle from the front door. Detective Regan testified that it was sunny and that he had a clear view of the front door.

As Detective Regan watched from the car, the informant walked to the house and knocked on the door. A man answered the door, and, from previous contacts, Detective Regan recognized the man as Mr. Coleman. The informant asked Mr. Coleman for a $20.00 rock of crack cocaine, and he briefly went back inside the house. He reappeared and gave the informant two beige rock-like items in exchange for $20.00 in cash. Detective Regan testified that the transaction took place on the front porch, and that he had a clear view of it.

The rock-like items tested positive for crack cocaine, and Mr. Coleman was subsequently arrested and charged with one count of selling cocaine. The amended information further alleged that Mr. Coleman was a prior and persistent drug offender pursuant to §§ 195.275 and 195.291. Prior to trial, the court received evidence of Mr. Coleman's prior convictions, and he was found to be a prior and persistent drug offender. Also prior to trial, Mr. Coleman filed a motion asking the trial court to disclose the identity of the confidential informant, alleging that the informant had knowledge which would support his defense of mistaken identity. Mr. Coleman's motion was denied by the trial court.

At the close of the trial, Mr. Coleman was found guilty of one count of selling cocaine. Shortly after the jury returned its verdict, Mr. Coleman's counsel learned that one of the jurors, Christopher Burnett, had gone to the scene of the crime on the evening before jury deliberations began. Mr. Coleman's counsel moved for a mistrial, and an evidentiary hearing was held.

Mr. Burnett testified at the hearing, and stated that he had visited the scene because, at trial, defense counsel had been "making such a big deal" by contending that Detective Regan could not see the transaction from where he was parked. Mr. Burnett explained that he had stopped his car where Detective Regan had previously parked, and that he could see the door clearly from that spot.

Mr. Burnett stated that, at the beginning of jury deliberations, the vote was ten to two in favor of conviction. According to Mr.

Burnett, the two jurors who voted not guilty explained their vote by stating that it would be unfair to "just convict a man after one minute," and that they "wanted to talk about everything that went on instead of having a unanimous decision from the very beginning and just leaving." Mr. Burnett also stated that the two jurors who initially voted not guilty were concerned about Detective Regan's identification of Mr. Coleman.

Mr. Burnett then told the jury of his visit to the scene, and the jury continued to deliberate for another half-hour before voting unanimously to convict Mr. Coleman. In describing the jury's response to his disclosure, Mr. Burnett stated that "[e]verybody was saying they couldn't go on what I was saying because they couldn't see it with their own eyes." Mr. Burnett added that "when we were deliberating we said what I saw was irrelevant to the case anyway, because no one saw it but me." Mr. Burnett twice stated that the jury did not consider the information he gave them in arriving at their verdict.

Kevin Gaultin also testified at the hearing, and stated that he was one of the two jurors who had initially voted not guilty. But Mr. Gaultin added that he thought Mr. Coleman was guilty before he heard anything from Mr. Burnett. Mr. Gaultin also indicated that, in reaching a guilty verdict, he believed Detective Regan's testimony regardless of what Mr. Burnett had told him.

At the conclusion of the hearing, the trial court denied Mr. Coleman's motion for a mistrial, finding there was no prejudice to Mr. Coleman. The ensuing judgment recited that Mr. Coleman was "a prior offender and a persistent offender pursuant to the provisions of Sections 558.016 and 557.036.4," a statement which was at variance with the court's pretrial finding that Mr. Coleman was a prior and persistent *drug* offender, as alleged in the amended information. Mr. Coleman was sentenced to a twenty-year term of imprisonment.

■ In his first point on appeal, Mr. Coleman claims that the trial court abused its discretion in denying his motion for a mistrial on the ground of juror misconduct. Mr. Coleman contends that he was prejudiced, and that his rights to a fair trial and to due process of law were violated, when Mr. Burnett investigated the scene and then told the other jury members about the results of his investigation.

Both parties agree that, as a general rule, jurors may not impeach their own verdict. *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984). Both parties also acknowledge that, in *State v. Taylor*, 917 S.W.2d 222, 225 (Mo. App. W.D.1996), this court has held that when—as in this case—the State fails to object to a juror's attempt to impeach his or her own verdict, the State waives its right to complain of the court's consideration of such evidence. In its brief, the State suggests that *Taylor* is an incorrect extension of the holding in *State v. Suschank*, 595 S.W.2d 295, 298 (Mo.App. E.D.1979); however, we need not address this contention because, even if we consider the rule to be waived by the State, Mr. Coleman is not entitled to relief on his claim of jury misconduct.

■ The mere fact that a jury has seen improper evidence does not automatically entitle the defendant to a new trial. *Taylor*, 917 S.W.2d at 226. A new trial will be required only where the defendant has been prejudiced by the juror misconduct. *Id.* A rebuttable presumption of prejudice arises upon evidence of improper communication with, or other influences upon, the jury during deliberations; however, this presumption can be overcome by competent evidence of a lack of prejudice. *Id.*

■ This court utilizes an abuse of discretion standard to review the trial court's refusal to grant a new trial. *Id.* Under such a standard, this court must determine whether the trial court's ruling constituted an abuse of discretion because it offended the logic of the circumstances or was arbitrary and unreasonable. *Id.* An abuse of discretion exists when reasonable persons could not differ as to the propriety of the action taken by the trial court. *Id.* In our review, we are guided by the rule that the trial court is in a better position than an appellate court to determine whether the unauthorized evidence prejudiced the defendant. *Id.*

We do not believe that the trial court abused its discretion in finding a lack of prejudice in this case. The testimony of Mr. Burnett and Mr. Gaultin constituted sufficient evidence of a lack of prejudice to overcome the presumption of prejudice. Point denied.

■ In his second point on appeal, Mr. Coleman claims that the trial court abused its discretion in denying his motion to disclose the identity of the confidential informant who made the drug purchase in this case. Mr. Coleman contends that disclosure was warranted because the informant was an active participant in the drug sale, because his defense was based upon mistaken identity, and because the informant was better situated than Detective Regan to identify the seller.

In his pre-trial motion, Mr. Coleman made the following allegations regarding the need for disclosure in this case:

> The confidential informant ... has personal knowledge of the alleged offense, and will support the Defendant's defense to the above-captioned charge.
>
> The Defendant states he was not present at [the scene] at the time of the crime alleged in the information.
>
> The Defendant has already filed a list of alibi witnesses who will testify he was not present at the time of the alleged crime. The mistaken identity of the Defendant is a crucial issue in this matter.
>
> According to police reports provided by the state, the confidential informant was the only active participant other than the vendor in the exchange; only the CI can positively identify the vendor because:
>
>> The CI was alone when he bought the narcotics;
>>
>> [The house] has a screen on the front door which would prevent any of the officers positioned in the street from positively identifying the Defendant. Several other males with the same physical description live at or regularly visit [the house].

At the pre-trial hearing on the motion, Mr. Coleman's trial counsel reiterated some of these factual allegations, adding that Detective Regan was forty-five to fifty feet away from the actual scene of the crime, and that Detective Regan had never stopped or arrested Mr. Coleman before.

■ The common law privilege against disclosing the identity of a confidential informant is based upon the public policy of effective law enforcement. *State v. Gray,* 926 S.W.2d 29, 32 (Mo.App. W.D.1996). However, concepts of fundamental fairness may create exceptions to the rule in some cases, and there are circumstances in which disclosure of the identity of an informant is essential to enable the accused to adequately establish a defense. *Id.*

■ Where an informant is an active participant in the criminal activity, there is a greater likelihood that fundamental fairness will require disclosure of identity, as distinguished from situations where an informant merely provides information. *State v. Hill,* 890 S.W.2d 750, 753 (Mo.App. W.D.1995). Although participation is a major factor for the trial court to consider, participation alone does not always mandate disclosure. *Id.* Where there is active informant participation plus other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or where the informant is the sole witness to the crime charged, then the identity of the informant may be required for purposes of fairness. *Id.*

■ Whether a defendant can have a fair trial without disclosure of the identity of an informant rests within the sound discretion of the trial court. *State v. Shannon,* 892 S.W.2d 761, 764 (Mo.App. W.D.1995). In reviewing the trial court's ruling on this issue, this court balances the relevance and importance of disclosure to the defense against the State's need for nondisclosure. *Id.* It is the burden of the defendant to develop a record showing the need for disclosure. *Id.*

Mr. Coleman did not meet this burden in the case at bar. It is true that where, as here, the informant is an active participant, there is a greater likelihood that fundamental fairness will require disclosure of the informant's identity. *Hill,* 890 S.W.2d at 753. However, such participation does not man-

date disclosure, and Mr. Coleman has not sufficiently established any of the other factors which might necessitate disclosure of the informant's identity. There was no contradictory testimony, and no denials of the accusation, as Mr. Coleman did not present any evidence. The informant was not the sole witness to the crime charged, as Detective Regan watched the entire transaction from his vehicle.

Mr. Coleman did claim that mistaken identity was an issue in this case, but he was required to demonstrate more than bare assertions or speculative or conclusory allegations in support of his claim. Arguments and statements of counsel are not evidence of the facts presented. *Shannon,* 892 S.W.2d at 765. In other words, Mr. Coleman failed to show, either by demonstrating weakness in the State's case or by development of a defense, that disclosure was needed because of a genuine question of mistaken identity or any other issue. Mr. Coleman did not raise a substantive question as to Detective Regan's ability to identify him as the seller; on the contrary, Detective Regan's identification of Mr. Coleman was positive and unequivocal, despite vigorous cross-examination by Mr. Coleman's trial counsel. Point denied.

The judgment of the trial court is affirmed. However, the cause is remanded for entry of an order *nunc pro tunc* to reflect that Mr. Coleman was found to be a prior and persistent drug offender pursuant to §§ 195.275 and 195.291, rather than a prior and persistent offender pursuant to §§ 558.016 and 557.036.4. *State v. Anthony,* 857 S.W.2d 861, 868–69 (Mo.App. W.D.1993).

All concur.